## CIRCUIT COURT OF THE CITY OF NORFOLK

Royster Co.

v.

Max Kinley

June 28, 1988

Case No. L87-3172

By JUDGE JOHN W. WINSTON

Royster Company, a Virginia corporation with its principal office in Norfolk, through Count II of its Motion for Judgment, seeks money damages from Max Kinley founded in his alleged intentional misrepresentations made to Royster verbally and by a document designated "Warehouse Receipt" in the course of contract negotiations and amounting to intentional fraud.

Max Kinley was and is a resident and citizen of Florida and the President of Sabar Trade Corp., a foreign corporation formed under the laws of the Virgin Islands and doing business in Florida, including Tampa.

Mr. Kinley is before this court as the result of being served with legal process through the Secretary of the Commonwealth in Richmond, Virginia, pursuant to the provisions of Virginia Code §§ 8.01-328.1 and 8.01-329 (Long Arm Statute).

In his Motion to Quash Service of Process (filed under a Special Appearance) which is now being considered, Kinley asserts that he was never subject to service under our Long Arm Statute, that Virginia is not a convenient forum, and that the questions of his scope of employment

and of whether he can be sued for fraud are controlled by the laws of Florida.

Virginia Code § 8.01-328.1(A) provides that "A court may exercise personal jurisdiction over a person . . . : as to a cause of action arising from the person's: 1. Transacting any business in this Commonwealth . . . ." It does on to say in (B) that "When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him . . . ."

A single business transaction in Virginia has been held enough to confer forum jurisdiction over the parties to it. *Kolbe, Inc. v. Chromodern, Inc.,* 211 Va. 736, 740 (1971); *I. T. Sales, Inc. v. Dry,* 222 Va. 6 (1981); *Peanut Corp. v. Hollywood Brands, Inc.,* 696 F.2d 311 (4th Cir. 1982).

The affidavits filed establish that the transaction which gives rise to this claim against Max Kinley began with a telephone call from him in Tampa to Jim Shirley in Norfolk (Shirley was Royster's Executive Vice President) in January, 1987. Kinley had a quantity of urea for sale in Florida. Over several days of phone calls, these individuals negotiated an oral agreement pursuant to which Royster would purchase the urea at $98.00 a ton, and Sabar would repurchase it at $102.00 a ton by May 31, 1987. It was in these phone calls that the alleged false misrepresentations amounting to fraud were made by Kinley.

Written contracts of purchase and sale were drafted and signed in Miami by Kinley who then mailed them to Royster for execution in Norfolk. He also sent a "Warehouse Receipt" with those contracts. Upon receipt of the contracts and of the receipt, Shirley signed and returned to Kinley in Miami by mail the two contracts and with them Royster's check for $339,725.82. No part of this money as deposited in Tampa has ever been returned to Royster by Sabar or by Kinley. And no urea ever changed hands between them.

Clearly there was the transaction of business in Virginia by Sabar and by Kinley. The oral negotiations were initiated by Kinley to Royster's Shirley in Virginia and led directly to the agreement between them which became the written contracts first executed in Florida by Kinley for Sabar and thereafter made binding by their execution in Virginia by Shirley for Royster. And the money that

supported this transaction originated in Virginia. The allegedly intentional fraudulent misrepresentations made by Kinley over the phone to Shirley were inextricably intertwined with the negotiations which led to the Virginia contracts. They were an integral part of the negotiations that made up the preliminary part of the business that was transacted in Virginia. For that reason, the alleged fraud was part and parcel of that entire business transaction and constitutes one of the causes of action that arose from it.

Because this court finds that our Long Arm Statute confers jurisdiction upon it in this case, the further question arises whether there were minimum contacts between Kinley and the Commonwealth of Virginia to satisfy the requirements of due process. This Court finds that under the facts here, the notions of fair play and substantial justice are not offended by requiring Kinley, who purposely availed himself of the privilege of conducting a business transaction in Virginia, to subject himself to the jurisdiction of the forum Court there to answer for the alleged consequences of that transaction.

Kinley further asserts that this is an inconvenient forum for him in any event. It is not surprising that he would so contend. He would prefer that Royster bring this action in Tampa where he is, his records are, and his witnesses are said to be. But to accommodate him would mean that Royster would have to go to Florida and take its records and its witnesses there from Virginia. Thus to convenience Kinley, the Court would have to inconvenience Royster. Our venue statute (Virginia Code § 8.01-262) permits a Virginia plaintiff to file a civil suit against a non-resident such as Kinley in the Virginia county or city where the plaintiff resides. Royster has so filed here and no valid reason has been suggested why it should not be allowed to proceed in the forum selected.

Finally and without ruling whether the laws of Virginia or of Florida control the direction of this lawsuit, should Florida law do so, this Court will interpret and follow its directions.

Please present an order overruling the Motion to Quash allowing time for Kinley to file further pleadings should he so desire and noting objections.